UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL DOLGICER, *individually and on behalf of all those similarly situated*,

                Plaintiff,

-v-

SAREPTA THERAPEUTICS, INC., DOUGLAS S. INGRAM, DALLAN MURRAY, *and* LOUISE RODINO-KLAPAC,

                Defendants.

25 Civ. 5317 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In this putative securities class action, plaintiffs Anthony Defilippis, Nicholas Barrass, William Wrede, and Robert Feldstein (the "Investor Group") move to be appointed lead plaintiff and to have their attorneys, Grant & Eisenhofer P.A. ("G&E") and The Schall Law Firm ("Schall"), appointed lead counsel.

For the following reasons, the Court appoints (1) the Investor Group as lead plaintiff and (2) G&E and Schall as lead counsel.

**I.    Background**

On June 26, 2025, plaintiff Daniel Dolgicer filed this lawsuit against defendant Sarepta Corporation ("Sarepta") and its chief executive officer Douglas S. Ingram, chief commercial officer Dallan Murray, and chief scientific officer Louise Rodino-Klapac (collectively with Sarepta, "defendants"). Dkt. 1 ("Compl."). The putative class consisted of all persons and entities who purchased or acquired shares of Sarepta between June 22, 2023 and June 24, 2025, inclusive (the "class period"). *Id.* ¶ 1.

Sarepta, based in Cambridge, Massachusetts, is a biopharmaceutical company focused on developing RNA and gene therapies to treat rare diseases. *Id*. ¶¶ 2, 17. Dolgicer alleges that, during the class period, Sarepta misled investors about the safety and efficacy of its gene therapies. *Id*. ¶ 3. In particular, Sarepta allegedly concealed material adverse facts about ELEVIDYS, a prescription gene therapy tailored for individuals with Duchenne muscular dystrophy. *Id*. ¶¶ 2–4. As a result, Dolgicer alleges, Sarepta gave investors an overly optimistic outlook for ELEVIDYS's regulatory approval and financial success. *Id*. ¶ 4.

On June 22, 2023, Sarepta announced the launch of ELEVIDYS clinical trials and its intention to "expand [ELEVIDYS] as broadly as good science permits." *Id*. ¶ 26 (quoting Sarepta June 2023 Press Release).[1] In ensuing announcements, Sarepta highlighted the "particularly impressive" performance and "first-in-class launch excellence" of ELEVIDYS's clinical trials. *Id*. ¶ 36.

On March 18, 2025, however, Sarepta reported that a patient had died from acute liver failure after treatment with ELEVIDYS. *Id*. ¶¶ 5, 58. Sarepta, nonetheless, declared that the "benefit-risk of ELEVIDYS remains positive." *Id*. ¶ 58. After this announcement, Sarepta's stock price fell 27.44%, closing at $73.54 per share. *Id*. ¶ 59.

Approximately two weeks later, on April 4, 2025, Sarepta disclosed that it was pausing recruitment and dosing in three ELEVIDYS clinical trials. *Id*. ¶ 60.

On June 15, 2025, Sarepta announced that a second patient treated with ELEVIDYS had died of acute liver failure, and that it was suspending shipments of ELEVIDYS to certain patients and re-evaluating a clinical trial in accord with FDA protocol. *Id*. ¶ 62.

---

[1] The June 2023 Press Release was issued after Sarepta secured accelerated FDA approval for ELEVIDYS. Accelerated FDA approval is an expedited approval process available for therapies that target serious conditions and fill an unmet medical need. Compl. ¶ 26.

2

On June 24, 2025, the FDA announced it was investigating the risk of acute liver failure from ELEVIDYS and assessing the need for further regulatory action. *Id.* ¶ 64. As of June 25, 2025, Sarepta's stock price was $17.46 per share, down some 82.77% from before the announcement of the first ELEVIDYS-related death. *Id.* ¶ 65.

On June 26, 2025, the day the Complaint was filed, notice of the lawsuit was published by Shamis & Gentile P.A., a class action law firm. Dkt. 36, Ex. C. As required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A), the notice summarized the bases for the action and informed members of the putative class that they had 60 days to move for appointment as lead plaintiff.

On August 25, 2025, Investor Group filed a motion for appointment as lead plaintiff and approval of its chosen counsel, G&E and Schall. Dkts. 34–36. Investor Group is the only party who presently seeks appointment as lead plaintiff.[2]

## II.  Appointment of Lead Plaintiff

The PSLRA governs motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under federal securities laws. It directs the Court to

---

[2] On August 25, 2025, eight other parties—Sharad Chib; Masum Jain; a group consisting of Joseph J. Coury, Paolo Federici, and Somil Patel ("Coury Group"); a group consisting of Irving Firemen's Relief & Retirement Fund and Miami Firefighters' Relief and Pension Fund ("Irving and Miami Group"); Adrian Cunje; Matthew Gladbach; the City of Pontiac Reestablished General Employees' Retirement System ("Pontiac"); and a group consisting of Oriel Rothenberg, Carolyn Hall, and Paul Clark ("Rothenberg Group")—moved for appointment as lead plaintiff and approval of their chosen counsel. Dkts. 24 (Chib), 28 (Jain), 31 (Coury Group), 37 (Irving and Miami Group), 38 (Cunje), 41 (Gladbach), 45 (Pontiac), 50 (Rothenberg Group). Between August 28 and September 10, 2025, six of the eight withdrew or filed statements of non-opposition. Dkts. 55 (Cunje), 56 (Chib), 58 (Jain), 60 (Coury Group), 63 (Irving and Miami Group), 64 (Rothenberg Group), 65 (Pontiac). The seventh, Gladbach, filed a reply on September 5, 2025, conceding that "he does not claim the largest financial interest in this case" and declining to argue further for his bid or to identify infirmities in Investor Group's application. Dkt. 61 at 2. Given that, the Court does not further consider Gladbach's motion here.

3

appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person who: (1) has either "filed the complaint or made a motion in response to a notice," *id.* § 78u-4(a)(3)(B)(iii)(I)(aa); (2) has the "largest financial interest in the relief sought by the class," *id.* § 78u-4(a)(3)(B)(iii)(I)(bb); and (3) "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," *id.* § 78u-4(a)(3)(B)(iii)(I)(cc). "[T]his presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

As noted, Investor Group timely moved for appointment in response to a notice, satisfying the first prong. Dkt. 34. The Court therefore turns to the other PSLRA standards.

### A. Financial Interest

Investor Group certifies that, during the class period, it purchased a total of 40,830 Sarepta shares and lost at least $2,777,425. Dkt. 36; *see also* Dkt. 36, Ex. B. Investor Group arrives at this loss calculation applying the methodology used by this Court in *Turpel v. Canopy Growth Corp,* under which a shareholder can recover only what he or she lost as a result of disclosure of the false statement. 704 F. Supp. 3d 456, 467–70 (S.D.N.Y. 2023). Using the last-in-first-out ("LIFO") methodology, however, Investor Group calculates its loss to be greater,

$2,789,700. Dkt. 66 at 3–4. Under either the *Canopy Growth* or LIFO methodology, Investor Group's financial stake far exceeds that of any remaining prospective lead plaintiff.[3]

Because no prospective lead plaintiff with a larger financial stake has come forward, and the Court does not have access to non-parties' financial records, the Court assumes that Investor Group's financial interest makes it a suitable lead plaintiff. *See, e.g.*, *Bristol Cty. Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, No. 18 Civ. 3021, 2018 WL 3546182, at *1 (S.D.N.Y. July 24, 2018); *Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11 Civ. 5097, 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011); *Jolly Roger Offshore Fund LTD v. BKF Cap. Grp., Inc.*, No. 7 Civ. 3923, 2007 WL 2363610, at *3 (S.D.N.Y. Aug. 16, 2007).

### B.    Rule 23 Requirements

Rule 23's requirements for class certification are commonly referred to as numerosity, commonality, typicality, and adequacy. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).

At this early stage of litigation, however, "only the last two factors—typicality and adequacy—are pertinent." *Lopez v. CTPartners Exec. Search Inc.*, No. 15 Civ. 1476 (PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) (quoting *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)). A lead plaintiff's claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960

---

[3] Gladbach, the only prospective lead plaintiff who has neither withdrawn nor filed a notice of non-opposition, purchased 2,445 Sarepta shares and lost $219,586 under the LIFO methodology. Dkt. 44, Ex. D.

F.2d 285, 291 (2d Cir. 1992). A lead plaintiff is adequate where it "does not have interests that are antagonistic to the class that [it] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that [it] seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)). To obtain appointment as lead plaintiff, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

Investor Group's claims "are typical of the class because [its] claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (citing *Drexel*, 960 F.2d at 291). As alleged, every member of the putative class "(1) purchased or acquired [Sarepta] securities during the class period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market." *Jolly Roger*, 2007 WL 2363610, at *4. Accordingly, Investor Group's claims, and those of putative class members, arise from the same course of conduct.

On the facts presently known, Investor Group is also an adequate class representative. Investor Group has certified that it is willing to fulfill the duties of lead plaintiff, Dkt. 36, Ex. A, and it has retained counsel with significant experience in securities class action cases, *id.*, Exs. D–E. And there is, as yet, no indication that Investor Group has interests antagonistic to those of the class. *See Plumbers, Pipefitters & MES*, 2011 WL 4831209, at *2; *Jolly Roger*, 2007 WL 2363610, at *5. Because Investor Group has thus far satisfied all PSLRA requirements, the

6

Court finds it the most adequate plaintiff. There is no credible basis to conclude that it "will not fairly and adequately protect the interests of the class" or is subject to "unique defenses" that render it incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Court therefore appoints Investor Group as lead plaintiff.

### III.   Appointment of Class Counsel

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval. *Id*. § 78u-4(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" *Sallustro v. CannaVest Corp.*, No. 14 Civ. 2900, 2015 WL 1262253, at *10 (S.D.N.Y. Mar. 19, 2015) (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 3 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)). Here, as noted, Investor Group has selected the firms of G&E and Schall. Having reviewed the firms' submissions as to their pertinent background and experience, including in litigating securities class actions, *see* Dkt. 36, Exs. E–D, the Court finds them well qualified to serve as lead counsel.

Accordingly, the Court appoints G&E and Schall lead counsel.

### CONCLUSION

For the foregoing reasons, the Court appoints (1) Investor Group as lead plaintiff and (2) G&E and Schall as lead counsel. The above-captioned action shall proceed under the caption *In re Sarepta Therapeutics Securities Litigation*, 25 Civ. 5317 (PAE).

The Court directs the parties to confer and jointly file by October 24, 2025 a proposed schedule for the filing of an amended complaint and briefing schedule for any motion to dismiss.

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: October 17, 2025
       New York, New York

8